# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| DYLAN HENDRICKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:21-cv-00526-CG-N |
| | ) |
| JOHN HAMM, COMMISSIONER; | ) |
| CYNTHIA D. STEWART; and | ) |
| SHARON FOLKS | ) |
| | ) |
| Defendants. | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

## JURISDICTION AND VENUE

1. This action arises under the First and Eighth Amendment to the United States Constitution brought under 42 U.S.C. § 1983.

2. This Court has jurisdiction of plaintiff's Federal claims pursuant to 28 U.S.C. § 1331.

3. Venue is proper under 28 U.S.C. § 1391(b), as the events and omissions giving rise to plaintiff's claims occurred within this judicial district.

1

## PARTIES[1]

4.  Plaintiff Dylan Hendricks is of legal age, a citizen, and a resident of Baldwin County, Alabama and is currently incarcerated in Atmore, Escambia County, Alabama.

5.  Defendant John Hamm is the current Commissioner for Alabama Department of Corrections (ADOC).  As the Commissioner, among other things, he is responsible for management of the facilities of the ADOC.  Defendant has a statutory duty under Alabama law to attend to the needs of inmates in the prison. He is sued in his official capacity, only.

6.  Defendant Cynthia D. Stewart was in July and August 2020, a Regional Director of the ADOC and responsible for approving the transfer of inmates, such as the Plaintiff, from one facility to another, as in from the Loxley Work Release Center (LWRC) to the Fountain Correctional Facility (FCF.)  She is sued in her individual capacity, only.

7.  Sharon Folks was in July and August 2020, the warden of the LWRC, and empowered with the ability to request and effect the transfer of inmates within her facility out of her facility to other ADOC's facilities.  She is sued in her individual capacity, only.

---

[1] Plaintiff may add more individual defendants, in particular the agents of the Alabama Department of Corrections whose acts are described herein but have not been identified. Plaintiff will seek expedited discovery to identify all potential defendants.

# FACTS

## Henricks' Transfer Out Of Loxley Work Release Center To Fountain Correction Facility And Subsequent Rape Therein

8. Mr. Hendricks went into the ADOC system through Kilby Correctional Facility (CF) on December 6, 2018. He was incarcerated on a parole violation for a non-violent/stolen property charge. He was transferred from Kilby CF to Staton CF on December 31, 2018. He was transferred from Staton CF to Red Eagle Honor Farm on May 16, 2019.

9. On August 30, 2019, he was transferred from Red Eagle to Loxley WRC. He performed work outside of the Center and apparently had no infractions other than a verbal warning in December 2019 for lingering on a phone call too long.

10. On January 20, 2020, Sharon Folks was transferred to Loxley WRC as its new Warden.

11. In the Spring and early Summer of 2020, Plaintiff's mother, Cheryl Hendricks, and fiancé, Kylie Herring, texted, faxed, and emailed ADOC agents regarding the medical needs of the Plaintiff.

12. On April 3, 2020, *The New York Times* ran a letter from Kylie Herring, Plaintiff's fiancé, regarding prison conditions in Alabama, the pandemic and her fear that Plaintiff would not survive his prison term.

13. On April 5, 2020, Carla Crowder, a representative of the Alabama Appleseed, an advocacy organization, inquired with the ADOC about medical

furloughs on behalf of Plaintiff and the possibility of providing multivitamins to him and other inmates because routine medical visits had been curtailed.

14. On April 14, 2020, a former U.S. Attorney, Joyce Vance interviewed Ms. Herring regarding Plaintiff, and how the pandemic was affecting his incarceration.

15. On April 15, 2020, Ms. Herring was interviewed in a news story with WKRG News 5 concerning Plaintiff and the effects of the pandemic on ADOC inmates and specifically the Plaintiff. Similar stories featuring Ms. Herring on behalf of Plaintiff ran on the CBS Morning News on April 22, 2020; the OSHA World News on April 23, 2020; and a follow-up story on WKRG News 5 on June 13, 2020. Ms. Herring also made a *Twitter* post on April 25, 2020 with a letter she received from 85 LWRC inmates seeking help to respond to the pandemic conditions which was shared with others including Kim Kardashian's Justice Network.

16. In July, 2020, Kylie Herring, Plaintiff's fiancé, read in the media that the ADOC system was suffering form a Covid pandemic outbreak, an inmate had tested positive for Covid, and that the ADOC facilities lacked sufficient sanitizing supplies to maintain the health and safety of the inmates. As a result, with her own funds and those raised from donations, Herring purchased hand sanitizer, sanitary wipes, bleach, masks, paper towels, and other cleaning supplies to donate to the LWRC, where her fiancé was housed, to protect the inmates from the spread of the infection. The cost of the supplies exceeded a thousand dollars.

17.     Herring called the LWRC to advise the Center that she had supplies to provide it.  She was advised to call back and speak with the administrator.  She called later was advised to "just bring it up."

18.     On July 15, 2020, Herring drove up to the LWRC guard shack where an officer advised her that she must wait for Warden Sharon Folks to speak to her whether she should leave the donation or not.  When Warden Folks finally arrived and met with Herring, she expressed her irritation at Herring's intrusion and past efforts on Plaintiff's behalf.  ADOC staff dumped the sanitizer donation in the parking lot.  Ms. Herring was advised that her donation for the facility could not be accepted although she could bring the remainder of it to the ADOC Administrative Building in Montgomery.

19.     On July 16, 2020, Nunciata King, the Classification Specialist Supervisor at the LWRC, emailed Angie Bassett, the ADOC Assistant Classification Director; Cynthia D. Stewart, Regional Director; and copied to others, memorializing a conversation in which Folks had requested Stewart that Plaintiff be transferred to another work release facility "due to inmate Hendrick's fiancé, Kylie Downer, making unapproved visits to the facility demanding to see inmate." That request was reiterated in another email to the same recipients on August 27, 2020.

20.     On August 5, 2020, an ADOC Classification Summary on Hendricks was prepared.  Warden Folks recommended that Hendricks stay at the Loxley WRC and noted that "the inmate has one major infraction…but doesn't warrant removal."

21. Nonetheless on August 27, 2020, Stewart approved Warden Folks' original transfer request and added FCF as a transfer facility recipient. She specifically advised Fountain CF Warden, Mary Cooks, that Plaintiff could be housed in any dorm except the "faith based or annex." Plaintiff should have been entitled to be housed in either dorm.

22. On August 27, 2020 a Classification Action form was signed by Nunciata King that stated:

> INMATE HENDRICKS HAS BEEN APPROVED TO TRANSFER TO FOUNTAIN DUE TO IMATE'S [sic] HENDRICK'S FIANCE, KYLIE DOWNER, CONTINUING TO MAKE UNNANNOUNCED/ UNAPPROVED VISITS TO THE FACILITY, AS WELL AS SENDING UNAPPROVED FAXES AND EMAILS TO THE FACILITY. THIS TYPE OF BEHAVIOR PRESENTS A CLEAR AND PRESENT DANGER TO THE DAILY OPERATION OF THE FACILITY AND MAKE INMATE HENDRICK'S [sic] AN ESCAPE RISK. TRANSFER APPROVED BY MS. STEWART, REGIONAL DIRECTOR.

23. On August 28, 2020, Mr. Hendricks was transferred to Fountain CF. Shortly after his arrival, he was raped by another inmate. Plaintiff was transferred to another dorm, but the rapist was permitted to retrieve him from that dorm and Plaintiff was raped again.

24. The rape was reported to ADOC staff, but Mr. Hendricks was never given any medical exam or testing, mental health evaluation or legal follow up after his assault. Hendrick's mother followed up on the rape report once by calling the ADOC main office and was told something to the effect of "How do we know this is true? We will talk to the Warden of Fountain…" No follow-up has since occurred.

25. There was no working PREA telephone number available to Plaintiff so that he could report the rape.

26. On September 3, 2020, Mr. Hendricks was moved to Easterling CF. In December, 2020, he was transferred from Easterling CF to the Alabama Therapeutic Education Facility (ATEF) and later to the GEO Group facility in Columbiana, Alabama. He has since been returned to Fountain CF in Atmore.

27. Apparently, his classification was never reduced from Level I. His parole date was moved from June 2020 until July 2022.

### Hendricks' Family's Attempts To Advocate For Him

28. In Ms. Herring's email correspondence with ADOC staff member, Janet Lejune on August 27, 2020, Herring addressed her concerns for Hendrick's medical well-being and attached corresponding medical records obtained from the ADOC. Ms. Lejune responded, "Where did you get these?" After that their communication stopped. Hendricks was transferred shortly thereafter.

29. Hendrick's mother, Cheryl Hendricks, made many attempts to inquire as to the reasons for her son's transfer away from Loxley WRC to Fountain CF. After many calls to Warden Folks, she was directed to Fountain CF. After many more calls to Fountain CF, she spoke to the Director of Intake who told her that her son's transfer was due to "too many unannounced visits" by Ms. Herring. The only non-scheduled visit was the one attempt to drop off COVID supplies as a donation.

30. Ms. Hendricks also tried to find out why Mr. Hendricks was transferred despite the classification summary that recommended he remain at Loxley WRC. Janet Lejune advised Herring that ADOC was irritated that Ms. Herring had been able to access Mr. Hendricks' medical records. These records had been released by ADOC to Ms. Herring after submission of an approved release form.

31. All follow up after August 27th was done by Cheryl Hendricks, Dylan's mother, and Donna Smith, his Parole Advocate. ADOC agents advised them that the transfer was due to Ms. Herring's persistence in pursuing assistance to Dylan. Since that time, the family has been hesitant to contact the ADOC to avoid any additional repercussion to Dylan Hendricks.

<u>Retaliation Against Hendricks Based Upon His Family's Advocacy</u>

32. After Hendricks' rapes and assaults at Fountain Correctional Facility, he was moved Easterling Correctional Facility in Clio, Alabama, where Hendricks advised the intake officer of the events. No one in ADOC investigated the assaults, conducted medical exams, offered a rape kit, offered mental help or counseling services, conducted any STD screening, or took any actions against the assailants.

33. The State of Alabama Department of Corrections Administrative Regulations 454 (dated April 19, 2016) sets out updated procedures to ADOC form 454-G. ADOC policy requires that alleged inmate victims to be taken to a medical unit for medical evaluation and determine whether a sexual assault kit is needed.

ADOC regulations also require immediate attention to victims of rape under State Laws as well as the Prison Rape Elimination Act.

34. Based upon Hendricks' medical condition, including a diagnosis of chronic hepatitis and advanced liver problems, Hendricks' would be eligible for a "medical furlough," in which affected ADOC inmates may be released from prison for medical conditions. The medical furlough program would require that Hendricks be seen by a health doctor under contract with ADOC and then a doctor outside of the contractors' health program to approve. These evaluations must first be approved by the warden of the ADOC facility where the inmate seeking medical furlough is housed. Hendricks' Warden refused to sign off on these health evaluations.

35. Hendricks was entitled to a parole hearing after he had served 1/3 of his sentence. His original sentence on October 24, 2018, was 144 months and thus, he would have been entitled to a parole hearing in June, 2020. To date, he has had none.

36. Upon information and belief, Hendricks has been singled out and denied services as guaranteed under ADOC policy and State Law, solely due to the advocacy by his family members as recited *infra*.

37. Plaintiff seeks relief which cannot be compensated through damages alone, and a legal remedy will be inadequate because it will provide incomplete relief.

# CLAIMS

## Count I.
## 42 U.S.C. § 1983 Seeking Equitable Relief from Hamm for the Retaliation in Violation of 1st and 8th Amendment

38.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

39.     Plaintiff was transferred from an ADOC work release center to a correctional facility based upon ADOC displeasure with the efforts of his family and his fiancé to either provide him care and/or to inquire into his well-being.

40.     Upon information and belief, Defendants and other unknown agents of ADOC either believed that Plaintiff's family and fiancé were acting on Plaintiff's direction or were doing so based upon their efforts to petition ADOC on his behalf.

41.     Plaintiff has a First Amendment right to petition ADOC on his own behalf, as do his family and fiancé.  As such, they were engaged in First Amendment protected activity;

42.     Plaintiff suffered an adverse action that would deter a person of ordinary firmness from pursuing First Amendment activity.  He further suffered an adverse action because of the First Amendment activity.

43.     The Defendant and other unknown ADOC agents, violate the First and Eighth Amendment of the Constitution if they punish an inmate in retaliation

for exercising his right to free speech, or such inmate is retaliated against due to his association with another person who has exercised their rights to free speech.

44. ADOC agents retaliated against Plaintiff due to his family's and his complaints about plaintiff's transfer from Loxley Work Release Center to Fountain Correctional Facility and his assault and rape at Fountain. ADOC agents retaliated against Plaintiff by denying him rights and services guaranteed him by state law and ADOC policies, including but not limited to medical and mental assistance after his rape, the right to prosecute his assailants, the right to medical furlough, the right to a timely parole hearing, and such other described rights recited, *infra*.

## RELIEF SOUGHT

As relief, plaintiff seeks the following:

    a.    Appropriate declaratory and injunctive relief to remedy the unlawful conduct;

    b.    And such other and further relief to which plaintiff is entitled.

## Count II.

## 42 U.S.C. § 1983 Seeking Relief from Stewart and Folks for the Retaliation in Violation of 1st and 8th Amendment.

40. Plaintiff incorporates paragraphs 34 through 39 of this complaint as if fully restated here.

41. Defendants Folks initiated the transfer of the Plaintiff from a lower classification and an innately safer correctional facility to a higher classification facility solely in retaliation for actions of Plaintiffs' fiancé on behalf of Plaintiff. The transfer was a punishment to Plaintiff for conduct not only out his control, but for conduct of a third party to petition for his safety and well-being.

42. Defendant Stewart approved the transfer of the Plaintiff from a lower classification and an innately safer correctional facility to a higher classification facility solely in retaliation for actions of Plaintiff's fiancé on behalf of Plaintiff. The transfer was a punishment to Plaintiff for conduct not only out his control, but for conduct of a third party to petition for his safety and well-being. Stewart specifically barred Plaintiff from a faith-based dorm or the Annex in the Fountain CF which were the safest living quarters and to which Plaintiff would normally have been entitled to be housed.

43. Folks and Stewart were aware of the risks attendant in transferring Plaintiff from a work release center to a high security prison and given the rampant risks of assault and rape in the facility as documented by the United States Department of Justice, the high risk of rape made the damages suffered by the Plaintiff foreseeable and attributable to their actions.

44. Folks and Stewart acted with malice or with reckless indifference to Plaintiff's rights guaranteed under the First and Eighth Amendments.

## RELIEF SOUGHT

As relief, Plaintiff seeks the following:

    a. Appropriate relief, including actual and punitive damages, to remedy the unlawful conduct;

    b. And such other and further relief to which Plaintiff is entitled, including attorney's fees and costs.

Respectfully submitted this 22nd day of February, 2023.

                                             *s/ Henry Brewster*
                                             Henry Brewster (BREWH7737)
                                             HENRY BREWSTER, LLC
                                             205 North Conception Street
                                             Mobile, Alabama  36602
                                             Tel:  251-338-0630
                                             Email:  hbrewster@brewsterlaw.net

<u>Certificate of Service</u>

I hereby certify that I have on this day, February 22, 2023, filed the foregoing document with the Clerk of the Court, using the CM-ECF filing system, which will send notice to the following:

>Laura E. Howell
>Assistant Attorney General
>Laura.Howell@AlabamaAG.gov

*/s/Henry Brewster*